```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF VIRGINIA
                    BIG STONE GAP DIVISION
```

| | |
|---|---|
| **YVETTE R. BELLAMY,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10CV00084 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Jillian E. Quick, Assistant Regional Counsel, and Stephen M. Ball, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the decision of the Commissioner.

I

Plaintiff Yvette R. Bellamy filed this action challenging the decision of the Commissioner of Social Security ("the Commissioner") denying her claim for social security income ("SSI") benefits pursuant to Title XVI of the Social Security

Act ("Act"), 42 U.S.C.A. §§ 1381-1383D (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Bellamy protectively filed for benefits in October 2007, alleging disability since October 18, 2007, due to a variety of physical and mental impairments, including mood disorder and personality disorder with anti-social and borderline features. Her claim was initially denied and upon reconsideration. Bellamy received a video hearing before an administrative law judge ("ALJ"), during which Bellamy, represented by counsel, two medical experts, and a vocational expert ("VE") testified. The ALJ denied Bellamy's claim, and the Social Security Administration's Appeals Council denied her Request for Reconsideration. Bellamy then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Bellamy was forty-five years old when she filed for benefits, a "younger individual" under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Bellamy, who has a high school education and vocational certificates, has not engaged in

relevant work in the last fifteen years. She alleges disability primarily due to mental impairments.

On October 26, 2004, based upon a court order, Bellamy presented at Scott County Mental Health Center ("SCMHC"). She admitted to drug and alcohol use, and as a result, was denied custody of her children. Although she could not be reached for an extended period, Bellamy returned to the facility on March 20, 2005, following a referral by a treating emergency room physician. Bellamy, having tested positive for cocaine, was diagnosed with depressive disorder and cocaine dependence. The treating practitioner found a global assessment of functioning ("GAF") score of 30.[1] He referred Bellamy to Lakeshore Mental Health Institute.

On November 11, 2005, Bellamy was again evaluated at SCMHC for outpatient crisis intervention, and she reported that she had discontinued any outpatient treatment with Lakeshore Mental Health Institute. Although Bellamy denied illicit drug use, she tested positive for cocaine. The treating practitioner found "no noted impairment of cognitive or memory functioning" and reported "[j]udgment, impulse control and insight appear to be fair." (R. 256.) The

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

practitioner diagnosed Bellamy with bipolar disorder, ("NOS"), in addition to the previous diagnosis of cocaine dependence. Bellamy refused inpatient treatment but agreed to seek outpatient care.

From February 24, 2006, until October 15, 2007, Bellamy was incarcerated at Virginia Correctional Center for Women. During this time, she regularly presented to a psychologist who diagnosed Bellamy with post-traumatic stress disorder, somatization disorder and dysthymic disorder. The treating psychologist noted Bellamy's "periodic and transient thoughts of self-harm," but concluded she was low-risk; the psychologist also found the assessment to be of questionable validity because "the client tended to portray herself in a negative light in certain areas." (R. at 541.)

In October 2007, Bellamy returned to SCMHC under court order to complete drug and alcohol counseling. It was noted that she had been incarcerated for the distribution of Lortab. Upon intake, on November 16, 2007, her GAF score was assessed at 55. On December 10, 2007, the treating physician found her cocaine dependence and alcohol abuse to be in remission and diagnosed her with a personality disorder. He noted that "she is [a] somewhat hostile and demanding woman…but not significantly depressed." (R. at 307.) The treating physician further found that "her thinking is logical, coherent, and goal directed with no evidence of a thought disorder." (*Id*.) He rejected her request for Klonopin,

"given her extensive history of drug use." (*Id.*) On January 15, 2008, she presented again at SCMHC, where the treating physician noted paranoia, irritable mood, and circumstantial though processes. However, he found no evidence of psychosis or acute psychological abnormalities. He recommended the continuation of previously prescribed medication, regular therapy sessions, alcohol and drug treatment, and random drug screenings.

On December 4, 2007, Kathy Jo Miller, M.Ed., conducted a psychological consultative evaluation of Bellamy. Miller noted Bellamy's "mood and effect were judged to be within normal limits," and she found "[t]here were no vegetative symptoms of depression or anxiety." (R. at 268.) Miller further reported that Bellamy "appears to be a person of average intelligence and is emotionally unstable, most likely secondary to a personality disorder." (*Id.*) Bellamy's GAF score was assessed at 60. Miller concluded that Bellamy's ability to understand and remember was not significantly limited, while her ability to sustain concentration and persistence were mildly limited due to personality disorder with antisocial and borderline features. Also, Miller found her social interactions to be moderately limited by the personality disorder but did not find significant limitations in adaptation.

On January 8, 2008, a state agency psychologist completed a mental residual functional capacity ("RFC") assessment. Therein, he noted Bellamy's mood

disorder and personality disorder; he also reported that her polysubstance abuse was in full remission. He found only mild limitations in daily living and moderate limitations in social functioning and concentration, persistence and pace. The psychologist concluded that Bellamy "can perform simple, routine, repetitive work in a stable environment." (R. at 284.) On May 30, 2008, a second state agency psychologist concurred with this opinion in a second mental RFC assessment.

On July 29, 2008, Bellamy began treatment with Deidra Fisher-Taylor, L.C.S.W., who diagnosed her with bipolar disorder, generalized anxiety disorder, and panic disorder without agoraphobia. Bellamy's GAF score was assessed at 45. In September and October 2008, Fisher-Taylor noted that response to treatment was average and maintained a GAF score between 45 and 48. From January 2009 until April 2009, Fisher-Taylor found that Bellamy's response to treatment was average, and thereafter, on July 23, 2009, her response to treatment was marked as good. Her GAF score was then assessed at 55.

From January 2009 until August 2009, Bellamy was also seeking treatment from John Shupe, R.W.C.S. Shupe concluded that Bellamy suffered from symptoms of severe bipolar disorder with psychosis but noted no acute psychological dysfunction throughout the treatment period. In seven visits, her response to and progress in treatment were both marked as average. Her GAF score was consistently assessed at 50.

On May 4, 2009, Bellamy presented to Indian Path Pavillion, where she was diagnosed with Bipolar Disorder NOS, mood disorder due to polysubstance dependence, borderline personality disorder, and polysubstance dependence. Her GAF score was assessed at 35. The treatment plan included detoxification, therapy sessions, and a referral to Magnolia Ridge for inpatient rehabilitation due to her polysubstance dependence. Despite the diagnoses, the treating physician noted logical thought process, fair concentration, and an age-appropriate intellect.

After reviewing the record, in addition to several physical impairments, the ALJ found that Bellamy suffered from the following severe mental impairments: mood disorder and personality disorder with antisocial and borderline features. The ALJ found that neither the physical nor mental impairments were of listing-level severity.

The VE testified that someone with Bellamy's RFC, age, and work history could work as a housekeeper, garment folder, or dry cleaner. According to the VE, there are approximately 67,000 jobs in the region and 673,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Bellamy was able to perform work that existed in significant numbers in the national economy.

Bellamy now challenges the ALJ's unfavorable ruling, arguing that the decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773,775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C.A. § 423(d)(2)(A) (West Supp. 2010).

In assessing SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *Id*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry rely upon an assessment of the claimant's RFC, which is then compared to the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. (*Id*. at 869.)

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Bellamy argues that substantial evidence does not support the ALJ's ruling that she is not disabled under the Act. Bellamy asserts that the ALJ improperly determined her RFC, given the professional opinions of treating practitioners Fisher-Taylor and Shupe.

Bellamy presented evidence of mental impairments that have considerably limited her potential occupational choices. She also asserts physical impairments, but her current appeal focuses on the mental impairments. While Bellamy's impairments have obviously impacted her, there is substantial evidence to support the ALJ's finding that she is not disabled as defined under the Act.

Bellamy argues that the ALJ incorrectly determined her RFC, which allowed for "work away from the general public and in a low stress environment… [wherein] the claimant would be precluded from repetitive work involving the left upper extremity." (R. at 58.) In particular, Bellamy asserts that the ALJ unduly rejected the professional opinions of Fisher-Taylor and Shupe in the RFC determination.

A treating source's medical opinion will control when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, under the regulations, a treating source is defined as "your own physician, psychologist, or other *acceptable medical source* who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902 (2010) (emphasis added); *see also* 20 C.F.R. § 416.913(a) (2010) (listing those sources that qualify as acceptable medical sources). Other

sources are not controlling but subject to evaluation by the ALJ to determine the appropriate weight of the opinion. *See generally* 20 C.F.R. § 416.927(d) (2010) (stating the factors to consider when determining the weight to give a medical opinion).

In the present case, because Fisher-Taylor was a licensed social worker and Shupe was a nurse practitioner, their professional opinions are not entitled to controlling weight. The ALJ rejected Fisher-Taylor's opinion, because he noted internal inconsistencies within her report. *See* 20 C.F.R. § 416.927(c)(2) (2010). Having considerable discretion into "other factors" affecting the weight given to an opinion, the ALJ further rejected Shupe's opinion, finding his conservative approach to treatment as counter to any claim of disability. *See* 20 C.F.R. § 416.927(d)(6) (2010) (stating, "When we consider how much weight to give a medical opinion, we will consider any factors…of which we are aware, which tend to support or contradict the opinion.")

Additionally, the remaining medical opinions support the findings of the ALJ. The ALJ appropriately relied on the medical opinions of the state agency psychologists. While not bound by the findings of state agency psychologists, the ALJ must consider the findings as opinion evidence from "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i) (2010). These experts opined that

Bellamy suffered from mood disorder, personality disorder with anti-social and borderline features, and a history of polysubstance abuse; however, they observed no signs, symptoms, or laboratory findings that indicated her impairments were of listing-level severity. Furthermore, these medical opinions comport with the findings of the SCMHC treating physicians, the Indian Path Pavillion treating physicians and Kathy Jo Miller, M.Ed., who all found mental impairments but found no acute psychological dysfunction. Finally, while particular GAF scores may indicate severe impairment, as Marvin Gardner, Ph.D., testified, "there's at least a high degree of likelihood that global assessment of functioning may have been lowered by drug or alcohol use." (R. at 87.) Thus, the ALJ's minimal reliance upon GAF scores was reasonable. For these reasons, I cannot find error in the ALJ's rejection of Shupe's and Fisher-Taylor's professional opinions.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 23, 2011

/s/ James P. Jones
United States District Judge